We're here, the next case, Treisman v. Green. May I begin? Thank you. May it please the Court, my name is Ben Gary Treisman. I'm the appellant in this case. I have only five minutes, so I will speak as fast as I intelligibly can. I have three main points that I'd like to address in this oral argument. First is the substantive crux of this case being the factual issue of whether the defendant's directives to me were merely advisory or mandatory under colored law and where sanctions were forthcoming for noncompliance. This is a material issue of fact that could not have been decided by the district court and was a jury issue. In fact, it did. None of the facts proffered by the defendants, including their statement of material facts, deny that the directives were indeed mandatory, a fact that the plaintiff that myself contends was the case in this case. Furthermore, the factual issue of the state of mind of the defendants in issuing these directives was in controversy and could not be resolved by the district court on summary judgment. Whether their directives were advisory, as they hold, or mandatory, as I hold, is a question of a state of mind, as well as an interpretation to be made on examination in court by a trial, in front of a jury trial. And this is a factual issue that cannot even be cross-examined in a summary judgment venue, in this kind of a summary judgment venue. I refer to this Court's holdings that all inferences and ambiguities are to be resolved in favor of a nonmoving party, as in Curry v. Syracuse, Second Circuit, 2003. Even if the parties agree to the situational facts, there is still a factual dispute as to the intent of the defendants in their directives, in their actual directives. Advisory is legal, whereas mandatory is not. That would become the constitutional violation of the First Amendment. As the district court characterized me as not responding to the defendant's statement of fact in technical conformance of the local rule and seeks to strike my factual allegations, however, I did provide such a response in the supplemental brief, which the judge had allowed for and, in fact, encouraged amendments to the original motion, as well as responses, and were, in fact, a part of the original brief, where the opportunity to correct their failure, the defendant's failure, to argue qualified immunity in the supplemental brief, the same opportunity at minimum should have been afforded me, and I substantively provided a response to their statement of facts. Notwithstanding I had not controverted their situational facts, I did controvert the interpretation of those situational facts. That would be my first point. Unfortunately, I'm getting close to there. All right. Quickly, though, the issue of the failure to train by the municipality was not decided against me by the district court. In fact, it was not even addressed by the district court, although present in the complaint and fully briefed. You are out of time, but you saved two minutes for rebuttal. Do you want to use those two minutes now, or do you want to wait for rebuttal? I will wait. Okay. We'll hear from the other side then. Thank you, Your Honor. May it please the Court. My name is Eric Kurtz. I'm here on behalf of the appellees. I think that this Court has addressed this issue on numerous occasions, and Justice Sotomayor stated it best in 1999 in her Wilkinson opinion, where basically, although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves. And I believe Justice Sack reiterated that difficult task. I'm afraid I'm still a judge and not a justice. Judge Sack reiterated that in the Kia Pee versus McIntyre case in 2000. What the appellant is claiming here is that the appellees violated his constitutional rights of freedom of association speech and parenting rights. And he has indicated that it is under the color of law that these were mandated. Well, last night I took the time to review the YouTube video that was posted by the appellant back in 2013 about the meeting with Amy Green and Kelly Whitaker. It's a redacted video. Except for us, do we have that? Pardon? Do we have that? I believe it is in the record. The one that I'm referring to was a 27.5-minute redacted version of the original one-hour and four-minute meeting that happened in October of 2011, which has been viewed by 535,000 people so far. In any event, in that interview, what the appellant has claimed were threats, I listened to very carefully. And some of the statements made, most of them were made by Amy Green, Kelly Whitaker's supervisor. I highly recommend that you stop weighing your daughter. I would like you to stop weighing your daughter. It is not a good idea to give your daughter cola at 9 a.m. If you are concerned about her weight, don't take her to McDonald's. You are sending her mixed signals, and by weighing her, you're telling her that she's fat. You should not be talking about side effects of medicines with a 7-year-old with a developmental delay. If you are concerned about her immediate health, take her to a hospital and let the doctor contact the mother who has custody of the child. That is fine that you talk about school, but don't ask her what is going on at home. What you are doing is inappropriate. I suggest that you take a parenting class. This will go over well with the judge. We will discuss inappropriate behavior with the judge. In summary, our suggestions are stop weighing your daughter, stop giving her soda in the morning, stop questioning her. In that list, do I see anything that is a threat of jail, a threat of not seeing your daughter? Or are those suggestions, are those recommendations made by professionals to try and help the child get through a rather nasty divorce, separation? That is the crux. And Judge Sharpe in the district court reviewed that video. He considered it over my objection, and I'm actually glad that he did because he basically says right there in his footnote, footnote number seven, the tape merely displays various defendants expressing their professional opinions while plaintiff attempts to manipulate them into making damaging statements. The video perhaps best demonstrates the difficult position that a child care worker find themselves in when balancing their duty to protect the best interests of the child with the fundamental rights of the child's parents. So what did the district court do? The district court rendered the initial decision in February of 2017, essentially removing on absolute immunity the attorneys from the case, dismissing the case against the Ulster County Municipality, but denying my motion with regards to the case workers, and then under Rule 56-4 stating, hey, look at qualified immunity. I think that should be addressed. He gave me 14 days to do so. I did so. He gave the appellant an additional 14 days after mine to do so, and he did so. And clearly qualified immunity applies. There's certainly no indication of deliberate indifference. There's no indication that what they did in this circumstance was beyond what any other case worker would do, the object of reasonable test. And I cited in my brief the two cases that were cited by the appellant, the outlaw decision with regards to whether I waived my qualified immunity argument. That decision was actually after trial, after the individual who wanted the qualified immunity specifically stated during summations he didn't want that even discussed, and also cites Wiley. But in Wiley, the court didn't allow the parties to address qualified immunity. They just made their decision. And with that, I rest. Thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honors. Enforcement actions do not trump First Amendment Federal rights. Indeed, that is the reason why the Federal protections are there for, to prevent against government overreach. Actually, all the things that were cited by counsel were not suggestions. They were threats. They were absolutely proven to be threats when, later on, they were followed up with enforcement actions against me when they believed that I had not followed their, quote, unquote, suggestions in actual mandated directives. Mandated directives are not legal, whereas kindly suggestions and advisements are legal. Qualified immunity does not apply. They didn't have it. They didn't support it with affirmative defense in any of their motions or response documents. They relied upon state immunities statutes to claim immunity under Federal law. And the state immunities cited allowed for more immunity than Federal law would have provided. District court supplementing that claim does not erase their obligation to raise and argue it as an affirmative defense. It cannot be simply advocated for them by the district court. And the district court made also no finding that the law was not established at the time. And that the defendants were fully aware of those standards, in fact. Just to get back to my second point, the issue of failure to train by the municipality was not decided against me by the district court. It was not even addressed by the district court. The failure to train the individual defendants by the municipality led directly to their actions depriving me of my First Amendment rights. They just apparently didn't know what the limitations of Federal law was upon what they could do to their wards and to their parents of their wards. The defendants were foreseeably put into a situation where they'd inevitably be in a position to infringe upon the people's constitutional rights and yet not be aware of their own legal limitations because of a lack of training by the municipality. Municipality does not have the ability, excuse me, the municipality does not have qualified immunity. And they did not train their employees on these crucial aspects of their job functions. Such a failure was approximate cause of the defendants violating my First Amendment's constitutional rights. Thank you. We will reserve decision. We have your papers as well. Thank you, Your Honors. The rest of the cases are on submission. I'll ask the clerk to adjourn. Thank you. Thank you.